[COMMENT1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-072-CR

 

 

BRIAN KENSON JOHNSON                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                            Introduction








The question in this appeal is whether the trial court
erred by signing nunc pro tunc orders to add an affirmative deadly weapon
finding to a judgment four and a half years after it signed the original
judgment, which recited ANONE@ in the space for
deadly weapon findings.  In a single
issue, Appellant argues that the trial court erred by signing the orders nunc
pro tunc because the trial court=s omission of an
affirmative deadly weapon finding in the original judgment was a judicial
decision and not a clerical error.  We
agree, and we reverse the nunc pro tunc orders.

                                                Background
Facts

On May 25, 1999, a grand jury indicted Appellant in Cause
No. 0726955A for the offense of attempting to commit capital murder of more
than one person in the same transaction @with a deadly
weapon:  to-wit:  a firearm . . . .@  On August 6, 2001, he pleaded guilty to the
offense of attempted capital murder in this cause and to charges of murder and
attempted murder in two other causes not in issue here, pursuant to a plea
agreement.  The plea agreement, signed by
Appellant, his counsel, and the prosecutor, reflects that the State=s recommended
sentence was A50 yrs IDTDCJ + conditions enumerated in
0724052@ in each case, to
run concurrently.[1]  The written Plea Admonishments in this cause,
also signed by Appellant, his counsel, and the State, provide as follows, in
pertinent part, with underlined blanks filled in by hand: 

[Y]ou are
hereby admonished in writing: 

 

1.  You are charged with the felony offense of: Att.
Capital Murder 

 

2.  If convicted, you face the following range of
punishment: 

 








X       FIRST DEGREE FELONY: a term of
life or any term of not more than 99 years, nor less than five years . . . .

The
written plea entered by Appellant in the record states,

I hereby, in open Court, enter my
plea of guilty to the (allegations contained in the
INDICTMENT/INFORMATION against me) (lesser included offense of  att. cap. murder).    

 

Appellant=s judicial
confession in the record states,

I swear my true name is Brian
Kenson Johnson.  I further state that
I have read the indictment or information filed in this case and that I
committed each and every allegation it contains.  I am guilty of the offense alleged as well as
all lesser included offenses.  I swear to
all of the foregoing and I further swear that all testimony I give in the case
will be the truth, the whole truth, and nothing but the truth, so help me God.

 

                      /s/                 

DEFENDANT

A reporter=s record of the
hearing on Appellant=s plea of guilty in all three cases on
August 6, 2001, has been filed in this court and reveals, as pertinent to the
issue before us, that the trial court confirmed that Appellant had read the
plea admonishments in each case and understood them and that the signature was
his in each place where his name was signed. 
The written plea admonishments and plea papers in each case were
admitted into evidence.  The trial court
then inquired,

THE COURT:  All right. 
In Cause No. 0724052, to the charge of murder, you may plead guilty or
not guilty.

 

THE DEFENDANT: 
Guilty.








THE COURT:  Are you pleading guilty because you are
guilty and for no other reason?

 

THE DEFENDANT:  Yes,
sir.

THE COURT:  All right. 
In Cause No. 0723702, to the charge of attempted capital murder, you may
plead guilty or not guilty.

 

THE DEFENDANT: 
Guilty.

THE COURT:  Are you pleading guilty because you are
guilty and for no other reason?

 

THE DEFENDANT:  Yes,
sir.

THE COURT:  And in Cause No 0726955, to the charge of
attempted capital murder, you may plead guilty or not guilty.

 

THE DEFENDANT: 
Guilty.

THE COURT:  Are you
pleading guilty because you are guilty and for no other reason? 

THE DEFENDANT:  Yes,
sir.

THE COURT:  All right. 
On your plea of guilty in each case, I=m going to find you guilty in each
case.  I=m going to assess your punishment in
each case to 50 years in the Institutional Division of the Texas Department of
Criminal Justice.  You=re to truthfully  -- testify truthfully against your
codefendants, testify at plea [sic], and furnish any communications between
Defendant and other codefendants.  All of
these will run concurrently.  Is that
your understanding of the plea-bargain agreement?

 

THE DEFENDANT:  Yes,
sir.

THE COURT:  And did
you approve that?

THE DEFENDANT: Yes, sir.








THE COURT:  Is that your understanding, Counselor?

 

MR. GILFEATHER:  Yes,
Your Honor.

THE COURT:  And did
you approve that?

MR. GILFEATHER:  Yes,
Your honor.  

The judgment form in this cause, Cause No. 0726955A, was
signed on the same date as the hearing, recites that Appellant is convicted of AATTEMPTED CAPITAL
MURDERCMULTIPLE VICTIMS,@ with an offense
date of March 1, 1999,  and recites the terms
of the plea bargain as A50 yrs IDTDCJ + CONDITIONS . . . .@  In the space for AFindings on Deadly
Weapon,@ the word ANONE@ is typed in. 

Some four and a half years later, on January 23, 2006, the
State filed a motion for judgment nunc pro tunc, alleging that the trial court
had Ainadvertently
omitted@ the affirmative
deadly weapons finding and that Appellant had pleaded guilty to the offense
including use of a deadly weapon and praying that the court correct the
judgment by adding an affirmative deadly weapon finding. 








On February 13, 2006, the trial court signed a nunc pro
tunc order stating that it had been Amade known [to]
and considered@ by the court that the entry relating to a
finding on use of a deadly weapon in the judgment was a clerical error and that
the affirmative finding of a deadly weapon had been Ainadvertently
omitted@ and ordering that
the entry be amended to recite, AThe Court
affirmatively finds that the defendant used or exhibited a Deadly Weapon,
to-wit: A firearm during the commission of the offense or during the immediate
flight therefrom.@  

On February 14, 2006, the trial court entered a second nunc
pro tunc order Acorrecting the minutes of the court,@ amending the
judgment to change the entry for AFindings on Deadly
Weapon:@ from ANONE@ to ATHE COURT
AFFIRMATIVELY FINDS THAT THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON,
TO-WIT: A FIREARM DURING THE COMMISSION OF THE OFFENSE OR DURING THE IMMEDIATE
FLIGHT THEREFROM.@ 

The trial court certified the case for appeal as involving
an appealable order.  The trial court
also ordered copies of both orders sent to the Institutional Division of the
Texas Department of Criminal Justice. 

                                           Deadly
Weapon Findings

An affirmative finding of the use or exhibition of a deadly
weapon may be made

when it is shown that a deadly
weapon . . . was used or exhibited during the commission of a felony offense or
during immediate flight therefrom, and that the defendant used or exhibited the
deadly weapon or was a party to the offense and knew that a deadly weapon would
be used or exhibited.  On an affirmative
finding under this subdivision, the trial court shall enter the finding in the
judgment of the court.

 








Tex. Code Crim. Proc. art. 42.12, ' 3g(a)(2) (Vernon
2006).

Article 42.12 contemplates a two-step process.  First, the jury or trial court as trier of
fact makes an express, affirmative finding of fact that the defendant used or
exhibited a deadly weapon in the course of committing the offense charged or in
immediate flight from the commission of the offense.  Polk v. State, 693 S.W.2d 391, 393
& n.1 (Tex. Crim. App. 1985). The term Aaffirmative
finding@ used in article
42.12 means an Aexpress determination@ by the finder of
fact that a deadly weapon was used or exhibited in the commission of the
offense or in immediate flight therefrom. 
Id.

Second, when that affirmative finding is made by the trier
of fact, it then becomes the mandatory duty of the trial court to enter a
separate and specific deadly weapon finding in the judgment.  Id. at 394.  Because parole eligibility is determined
on Aflat time@ alone without
consideration of good time for a conviction where a deadly weapon has been used
or exhibited, the statute was written to require entry of the finding in the
judgment in order that the Texas Department of Criminal Justice could know from
the judgment how to compute a defendant=s date for parole.
 LaFleur v. State, 106 S.W.3d 91,
94 (Tex. Crim. App. 2003) (citing Polk, 693 S.W.2d at 394).[2]








When the trial court is the finder of fact, it has the
authority to make an affirmative deadly weapon finding upon proper proof as
well as to enter it in the judgment.  Ex
parte Franklin, 757 S.W.2d 778, 780 (Tex Crim. App. 1988).   But no separate, express affirmative finding
by the trial court is required in certain instances. See, e.g., Marshall v.
State, 860 S.W.2d 142, 143 (Tex. App.CDallas 1993, no
pet.) (holding no express finding required when, by properly admonishing a
defendant and accepting his plea of guilty Ato indictment@ that charged use
of a deadly weapon, trial court necessarily found defendant used a deadly
weapon); see also Ex parte Empey, 757 S.W.2d 771, 774 (Tex. Crim. App.
1988) (holding affirmative deadly weapon finding arose as matter of law when
indictment charged defendant with use of deadly weapon and judge found
defendant guilty as alleged in indictment).








Where the trial court is the finder of fact, it is
discretionary with the court whether to make an affirmative deadly weapon
finding in the first instance even when such a finding would be supported by
the evidence.  See, e.g.,  Fanniel v. State, 73 S.W.3d 557, 559-60
(Tex. App.CHouston [1st Dist.] 2002, no pet.)
(holding trial court=s decision to make no affirmative deadly
weapon finding after finding defendant guilty of possession of controlled
substance enhanced by use of deadly weapon constituted judicial decision); Campos
v. State, 927 S.W.2d 232, 235 (Tex. App.CWaco 1996, no
pet.) (holding trial court had discretion not to make affirmative finding after
finding defendant guilty after bench trial but not Aas alleged in the
indictment@ and thereafter orally stating from the
bench that he made no deadly weapon finding; thus, later entry of affirmative
finding in judgment was error).         

And even where the trial court, as trier of fact, has made
an affirmative deadly weapon finding either expressly or as a matter of law, it
nevertheless retains the discretion not to enter the deadly weapon finding in
the judgment.  See, e.g., Hooks v.
State, 860 S.W.2d 110, 111 (Tex. Crim. App. 1993) (holding entry of
affirmative finding not mandatory and, thus, probation valid although judge
found defendant guilty of aggravated assault by threat with deadly weapon in
bench trial); Dickson v. State, 988 S.W.2d 261, 263 (Tex. App.CTexarkana 1998,
pet. ref=d) (same, noting
trial court had discretion not to enter deadly weapon finding even though use
of deadly weapon was essential element of offense).

                                             Nunc
Pro Tunc Orders








Cases involving the issue of whether an affirmative finding
of a deadly weapon should or should not have been made or entered in a judgment
have been fertile ground for producing nunc pro tunc orders.  While we do not know what prompted the State=s epiphany in this
case some four and a half years after conviction that Appellant=s judgment
erroneously omitted a deadly weapon finding, the instigating factor was likely
a communication from the Texas Department of Criminal Justice regarding
Appellant=s time served for purposes of release on
parole.  See, e.g., Ex parte Empey,
757 S.W.2d at 772 (noting State=s motion for
judgment nunc pro tunc was response to letter from TDCJ inquiring as to absence
of deadly weapon finding); Ex parte Dopps, 723 S.W.2d 669, 670 (Tex.
Crim. App. 1986) (noting trial court, without notice or hearing, issued
judgment nunc pro tunc adding affirmative deadly weapon finding to judgment
rendered five years earlier upon learning petitioner was about to be released
on parole); Polk, 693 S.W.2d at 393 n.1 (noting TDCJ=s concern that it
could not compute time without express finding in judgment as reason to specify
requirement for Aaffirmative finding@ by SB 152, now
article 42.12, ' 3g(a)(2)).








The purpose of a nunc pro tunc order is to correctly
reflect in the records of the trial court the judgment it actually made but
which, for some reason, did not enter of record at the proper time.  Smith v. State, 15 S.W.3d 294, 298
(Tex. App.CDallas 2000, no pet.).  Use of a nunc pro tunc order permits the
court Ato correct now
what the [judgment] reflects had already occurred at a time in the past.@  Id. (noting Latin phrase Anunc pro tunc@ means Anow for then@ and describes
inherent power of trial court to make its records speak the truth); Silva v.
State, 989 S.W.2d 64, 66 (Tex. App.CSan Antonio 1998,
pet. ref=d).  Therefore, before a judgment nunc pro tunc can
be entered, there must be proof the proposed judgment was actually rendered or
pronounced at an earlier time.  Smith,
15 S.W.3d at 299 (citing Jones v. State, 795 S.W.2d 199, 201 (Tex. Crim.
App. 1990)); Dickson, 988 S.W.2d at 263.

A judgment nunc pro tunc is improper if it has the effect
of making a new or independent order.  Smith,
15 S.W.3d at 299; see also Ex parte Dickerson, 702 S.W.2d 657, 658 (Tex.
Crim. App. 1986).  A correction can be
made to reflect what actually happened at trial by entry of a nunc pro tunc
judgment, Abut correction can be only as to what was
done and not as to what should have been done.@  Ex parte Dopps, 723 S.W.2d at 671
(citing Chaney v. State, 494 S.W.2 813, 814 n.1 (Tex. Crim. App. 1973)).








Additionally, it is well settled that a judgment nunc pro
tunc may correct only clerical errors in a judgment, not judicial omissions or
errors.  State v. Gobel, 988
S.W.2d 852, 853 (Tex. App.CTyler 1999, no
pet.).  A clerical error is one that does
not result from judicial reasoning or determination.  Smith, 15 S.W.3d at 299 (citing State
v. Bates, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994)).  The Acorrection process@ only involves a
process to insure that the record truthfully reflects what actually occurred,
not permit readjudication or the reopening of a controversy.  Smith, 15 S.W.3d at 299.  The determination of whether an error is
judicial or clerical in nature is a question of law.  Id. 

 

                                         Application
of Law to Facts

Appellant contends that any error in not making or entering
an affirmative deadly weapon finding in the judgment was not a clerical error
but the result of judicial reasoning so that the nunc pro tunc orders are
void.  The State responds that Appellant
had the burden to present a record showing reversible error and has failed to
present a sufficient record on appeal to support his claim that a deadly weapon
finding was not part of the plea bargain on which the judgment was based,
citing Ex parte Empey, in which the court of criminal appeals held that
the burden of proving allegations entitling the defendant to relief was on the
applicant.  757 S.W.2d at 775.








Ex parte Empey is not applicable here.  That case involved a petition for writ of
habeas corpus.  The court of criminal
appeals held that the petitioner had the burden of proving all allegations not
denied by the State in a habeas proceeding.  Id.  In
contrast, this is a direct appeal from the judgment nunc pro tunc in which the
State carried the burden on its own motion in the trial court.  See Smith, 15 S.W.3d at 298-99 (A[B]efore a
judgment nunc pro tunc may be entered, there must be proof the proposed
judgment was actually entered or pronounced at an earlier time@); see also
Jones, 795 S.W.2d at 201; Dickson, 988 S.W.2d at 263.  Nowhere in the plea papers or the reporter=s record of the
plea hearing is the term Adeadly weapon@ even
mentioned.  The State has not pointed to
an iota of proof from the plea hearing in 1999 nor any other evidence
indicating that a deadly weapon finding was part of the plea bargain. 








But the State contends that Appellant=s judicial
confession to the allegations of the indictment, which included the deadly
weapon allegation, and the trial court=s acceptance of
the Aplea papers,@ including
Appellant=s judicial confession and written
statement describing his exhibition of a pistol in the course of commission of
the offense, shows the court=s intent to accept
Appellant=s plea of guilty to the facts alleged in
the plea papers, including use of a deadly weapon.   We disagree for two reasons.  First, the trial court did not Aaccept@ the plea papers,
which included Appellant=s judicial confession and written
statement, as a plea of guilty.  Rather,
the State offered them into evidence as exhibits and the trial court merely
admitted them as State=s Exhibits 1 and 2.  We are not persuaded that simply by admitting
those materials as evidence, the trial court showed any intent to find
Appellant guilty as alleged in those materials.  That contention is not only unsupported,
it is contrary to the record.  Second,
the plea papers show no evidence of intent to find Appellant guilty of facts
including use of a deadly weapon. 
Appellant=s written plea of guilty is to the offense
of Aatt. capital
murder@ only.  And there is no mention of use of a deadly
weapon in the written plea, the judicial confession, or the written statement.








On this record, there is no evidence that a deadly weapon
finding was part of the plea agreement, and the record is uncontroverted that
it was not.  Compare Ex parte Empey, 757
S.W.2d at 775 (holding petition=s sworn
allegations insufficient in habeas corpus proceeding to establish plea bargain
agreement precluded deadly weapon finding), and Ex parte Griffin, 679
S.W.2d 15, 17 (Tex. Crim. App. 1984) (upholding trial court=s conclusion that
petitioner failed to prove his allegations as to terms of plea bargain where
testimony of defense attorney and prosecutor conflicted), with Ex parte
Dopps, 723 S.W.2d at 670-71 (holding defendant established deadly weapon
finding was never part of plea bargain agreement where there was no mention of
such finding in original judgment, 
minutes of court, transcript of plea bargain, waiver of rights, or
stipulation of evidence signed by defendant, her counsel, and trial judge), and
Ex parte Garcia, 682 S.W.2d 581, 582 (Tex. Crim. App. 1985) (holding
petitioner established plea bargain induced by promise of no deadly weapon
finding by sworn allegations, affidavit of counsel, comments of judge during
admonishments, lack of evidence to support finding, and failure of State to
controvert petitioner=s allegations).        

The State nevertheless maintains the basic position that
Appellant pleaded guiltyCand the trial court accepted his pleaCto the offense as
charged in the indictment, including the charge of use of a deadly weapon.  Again, we disagree.  In his questioning of Appellant at the plea
hearing, at no time did the trial court refer to the allegations of use of a
deadly weapon in the indictment, nor did the trial court find Appellant guilty
of the offense Aas alleged@ or Aas charged@ in the
indictment.  The trial court expressly
asked Appellant only to enter his plea of guilty or not guilty Ain Cause No.
0726955, to the charge of attempted capital murder,@ and further
stated, AAll right.  On your plea of guilty in each case, I=m going to find
you guilty in each case.@ 
The trial court then had Appellant confirm that he understood his plea,
the punishment, and his agreement to testify against his codefendants.








It is clear from the transcript of the plea hearing that
the trial court made no oral affirmative finding that Appellant used or
exhibited a deadly weapon and did not Anecessarily find@ Appellant used a
deadly weapon by finding him guilty Aas alleged in the
indictment,@ and there is no evidence he intended to
do so.  Instead, the trial court merely
found him guilty of the offense of Aattempted capital
murder@ pursuant to the
plea bargain agreement.  Therefore, the
cases holding that a deadly weapon finding arises as a matter of law when the
trier of fact finds a defendant guilty Aas alleged in the
indictment@ are simply inapplicable.  See Ex parte Empey, 757 S.W.2d at 773
(holding nunc pro tunc entry of deadly weapon finding proper where trial court
necessarily made affirmative finding by finding defendant Aguilty as
[alleged] in the second count of the indictment@ that alleged use
of a firearm); Marshall, 860 S.W.2d at 143 (same); see also Alexander
v. State, 868 S.W.2d 356, 361 (Tex. App.C Dallas 1993, no
pet.) (holding when defendant pleads guilty to indictment alleging use of
deadly weapon, court need not pronounce separate affirmative deadly weapon
finding but may simply enter finding in its written judgment).   








Therefore, the trial court could not properly sign a
judgment nunc pro tunc making such a finding four and one-half years later and
enter it in the judgment under the reasoning that it had Ainadvertently@ omitted to make
and enter such a finding in the original judgment.  See Ex parte Dopps, 723 S.W.2d at 671
(holding, absent proof that deadly weapon finding was actually contemplated,
rendered, or pronounced at an earlier time as part of plea agreement, trial
court=s finding that
deadly weapon finding would have been inserted in original judgment if omission
had been noticed established judicial omission, not clerical error); see
also Dickson, 988 S.W.2d at 264 (holding judgment nunc pro tunc adding
entry of deadly weapon finding would have improperly made new and independent
judgment correcting discretionary, judicial omission where trial judge did not
make finding in original judgment).             Moreover, any doubt as to the trial
court=s original intent
is removed by its express finding of ANONE@ regarding
affirmative deadly weapon findings in the original judgment.  The trial court=s express
statement that no deadly weapon finding was made was within the trial court=s discretion and
required judicial reasoning; thus, it could not be the result of a merely
clerical error.








We hold that the nunc pro tunc orders amending the judgment
by deleting ANONE@ and substituting
an affirmative finding that Appellant did use or exhibit a deadly weapon are
not a correction of a clerical error in the original judgment but are an
improper modification of a product of judicial reasoning and are, as a matter
of law, void.  See Fanniel, 73
S.W.3d at 559-60 (holding, when original judgment made no deadly weapon
finding, space for affirmative finding was marked AN/A,@ and trial judge
orally stated he made no finding, omission of finding of deadly weapon was
judicial decision); Campos, 927 S.W.2d at 235-36 (reforming judgment on
appeal to Aspeak the truth@ by deleting
affirmative deadly weapon finding as erroneous where judge found defendant
guilty and assessed punishment but expressly stated on record, AThere is no deadly
weapon finding@); see also Fisher v. State, No.
05‑92‑02601‑CR, 1997 WL 206787, at *4 (Tex. App.CDallas April 29,
1997, pet. ref=d) (not designated for publication)
(holding refusal to make finding in original judgment was product of judicial
reasoning and not clerical error when, although defendant admitted using deadly
weapon, deadly weapon was essential element of offense, and judgment found
defendant guilty of AAggravated Assault/DW,@ but trial court
declined to make or enter deadly weapon finding, affirmatively stated Ano findings,@ and placed
defendant on probation).  We sustain
Appellant=s first issue.

 

                                                     Conclusion








We pause to point out that A[b]efore any
unfavorable nunc pro tunc order[] [is] entered, the [defendant] should be given
an opportunity to be present for the hearing, represented by counsel, in order
to accord him due process of law.@  Shaw v. State, 539 S.W.2d 887, 890
(Tex. Crim. App. 1976) (holding procedure requires hearing at which evidence
must be adduced in presence of  defendant
proving events in question actually occurred); accord Homan v. Hughes,
708 S.W.2d 449, 454-55 (Tex. Crim. App. 1986) (holding entry of such an order Aex parte@ violates
defendant=s constitutional rights); see also
Vallez v. State, 21 S.W.3d 778, 782 (Tex. App.CSan Antonio 2000,
no pet.).  While Appellant=s counsel states
that the order in this case was entered over his objection, he has not
complained of the denial of a hearing. 
The State has, in the alternative to affirmance, requested abatement for
a hearing.  But we are convinced that the
entry of the nunc pro tunc orders was error because the lack of a deadly weapon
finding in this case was a product of judicial reasoning and not a clerical
error as a matter of law; thus, abatement or remand for a hearing to determine
how and why the trial court Ainadvertently@ omitted a deadly
weapon finding and stated ANONE@ in the space of
the judgment for affirmative deadly weapon findings would be a Auseless task.@  See Homan, 708 S.W.2d at 454-55
(concluding that ordering a hearing serves no purpose if outcome would not
change).  

Accordingly, we reverse the trial court=s orders nunc pro
tunc of February 13, 2006 and February 14, 2006, and order the affirmative
deadly weapon finding stricken from the judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL B:  LIVINGSTON, GARDNER, and MCCOY, JJ.

 

LIVINGSTON, J.,
filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  July 12, 2007

 

 

 

 








 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 




 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-072-CR

 

BRIAN
KENSON JOHNSON                                                    APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 371ST  DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 








------------

I disagree with the majority=s
holdings that the trial court failed to make a deadly weapon finding and used
judicial reasoning by inserting the word ANONE@ in the
judgment. 

The indictment states that appellant did Athen and
there, with the specific intent to commit the offense of capital murder . . .
intentionally shoot Kendrick Green and Alonzo Primus with a deadly weapon,
to-wit: a firearm.@ 
Based on the language in the indictment, appellant had notice that the
State would seek an affirmative finding.  See Ex parte Huskins, 176 S.W.3d
818, 820 (Tex. Crim. App. 2005). 
Further, when appellant signed the admonishment form and pled guilty to
the offense, he confessed that (1) he was the same person named in the
indictment and (2) that he committed the offense charged in the indictment,
which clearly stated that he did Aintentionally
shoot [the two victims] with a deadly weapon.@  See id.  Again, the indictment specifically alleged
the use of a Adeadly weapon,@ a
firearm.  Tex. Penal Code Ann. '
1.07(a)(17)(A) (Vernon 2006); Ex parte Huskins, 176 S.W.3d at 820.  








By asking appellant at the August 6, 2001 plea
hearing if he had signed page three of the plea admonishment formCwhich
referred back to the indictmentCby
accepting appellant=s verbal guilty plea, and by
stating, AOn your plea of guilty in each
case, I=m going
to find you guilty in each case,@ the
trial court necessarily determined that appellant used a deadly weapon Aby
shooting@ in the
commission of the attempted capital murder offense.  Ex parte Huskins, 176 S.W.3d at 820;
cf. Polk v. State, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985) (holding that
an affirmative finding is de facto made when the defendant is found guilty as
charged in the indictment).  Further, the
trial court never indicated any reason not to find that a deadly weapon
was used.  Contra Fanniel v. State,
73 S.W.3d 557, 559 (Tex. App.CHouston
[1st Dist.] 2002, no pet.) (where the trial court purposely omitted the deadly
weapon finding so that defendant would be eligible for deferred
adjudication).  

I also disagree with the majority that the trial
court used judicial reasoning to insert the word ANONE@ as its
deadly weapon finding.  No judicial
reasoning was necessary to see that appellant had notice of and pled guilty to
attempted capital murder by shooting two people with a deadly weapon; this had
already taken place in the 2001 plea proceeding.  See id.  If the trial court had not believed that the Ashooting@ with a
deadly weapon allegation was true, it would not have accepted appellant=s guilty
plea.  








Here, the trial court made two deadly weapon
findingsCan
affirmative finding by accepting appellant=s guilty
plea and a negative finding in the judgment. 
The trial court used judicial reasoning in making the affirmative
finding, as appellant pled guilty to the offense as alleged in the
indictment.  See Ex parte
Huskins, 176 S.W.3d at 820.  However,
unlike the court in Fanniel, the trial court here did not use judicial
reasoning when making the negative deadly weapon finding in the judgment.  See Fanniel, 73 S.W.3d at 559.  Accordingly, the trial court=s error
was clerical, and it justifiably entered a judgment nunc pro tunc which
reflected a deadly weapon finding.  See
Ex parte Huskins, 176 S.W.3d at 820. 
For the reasons set forth above, I respectfully dissent to the majority
opinion and would affirm the trial court=s order.

 

TERRIE
LIVINGSTON

JUSTICE

 

PUBLISH

 

DELIVERED:  July 12, 2007











[1]The Plea Agreement in
Cause No. 0724052 is not in the record, but the conditions referred to are not
at issue in this appeal. 





[2]This issue implicates
fundamental liberty interests.  A deadly weapon finding does not
alter the sentence that may be imposed but does affect a defendant=s eligibility for probation and
parole.  Ex parte Huskins, 176
S.W.3d 818, 820 (Tex. Crim. App. 2005). 
If the judgment contains an affirmative deadly weapon finding under
section 3g(a)(2) of article 42.12, a prisoner is not eligible for parole until
his actual calendar time served, without consideration for good conduct time,
equals one half of the sentence or thirty calendar years, whichever is
less.  Tex.
Gov=t Code Ann. ' 508.145(d) (Vernon Supp. 2006).
Thus, an improper deadly weapon finding will require Appellant to serve a
substantially longer period than would be required without the finding.     















 [COMMENT1]

Majority by Justice Gardner Dissent by Justice
Livingston